## A99A0501. DRISKELL et al. v. CRISLER.
### (515 SE2d 416)

BEASLEY, Presiding Judge.

Annabelle Crisler, the nearly destitute widow of Thomas Crisler, was awarded $193,000, the amount she sought, as year's support. Her application had been challenged by the co-executors, who were the daughter and son-in-law of Mr. Crisler. Annabelle was Thomas' second wife and stepmother to his daughter. The daughter, along with her two daughters, were the beneficiaries of the estate along with Mrs. Crisler. They contend that the award should be about $3,200, the amount of annual income reduction resulting from testator's death. The executors' four somewhat interrelated enumerations of error are presented on appeal from the probate court's judgment, reached after a bench trial at which the only evidence was Mrs. Crisler's testimony.

The issues arose in the following context. The Crislers married in March 1972, when Mr. Crisler was already retired and his daughter had achieved majority. He made his will in 1976 at a time when he had a comfortable amount of assets, including a home, savings, rental property, and stock in a paper company. He had sold his two grocery stores when he retired. Up until 1991 the Crislers shared an easygoing lifestyle, devoting a large amount of their time to expanding and tending their large flower garden, traveling by car for a number of days fairly regularly each month, frequently eating at restaurants and attending movies.

Mr. Crisler developed Alzheimer's disease or dementia and was finally institutionalized in April 1992 because Mrs. Crisler could no longer care for him independently. She visited with him nearly every day, except when she did not feel well or the weather was stormy. She was no longer able to garden to the extent they had, eat out, go to movies, or travel. She was unable to buy all medicines prescribed for her or to replace her clothing or shoes during this period, although she had dressed well during their marriage as her husband liked her to dress "elegantly." She could no longer afford a dry cleaner or hairdresser. She lived in the home (debt-free) that had been hers and had been rented out until they sold his home, but now it was in disrepair and in addition needed handicap access for her. The car, his 1985 Chevrolet Caprice, had logged over 185,000 miles, and the household appliances were old or inadequate for her to use without difficulty because of her physical condition. She could no longer manage housecleaning or yardwork by herself.

Their liquid assets, which had included the $12,000 saved for their funerals, became almost completely depleted because of the care Mr. Crisler needed in the four and one-half years he spent in the nursing home. They sold his home, in which they had been living, in

1991, and also sold his rental properties and used the proceeds. The only significant asset remaining was a parcel of real property left solely to Mr. Crisler's daughter and granddaughters. He died in October 1996, when she was age 76.[1] She herself has numerous physical ailments and has been unable financially to arrange for needed eye surgery or dentures.

In mid-January 1998, Mrs. Crisler timely applied for year's support from the estate, which was valued at about $584,000 plus the car and some household furnishings. Since her husband's death, her only income was $544 per month social security benefits. To help, her daughter supplied an additional $500 to $1,000 monthly for groceries, prescriptions, and items of that nature.

Under Georgia law, provision for "the support of the family" is regarded as one of the "necessary expenses of administration," and it is to be "preferred before all other debts" except as provided in the statute.[2] Although it contravenes the theory that every competent person should be free to dispose of property at death as the individual desires, public policy imposes a protective system so that the widow or widower and minor children are not left out.[3] Consequently, upon application, "a sufficiency from the estate for their [spouse and minor children] support and maintenance for the space of 12 months from the date of death of the testator" is to be set aside and assigned to them, plus "a sufficient amount of the household furniture."[4] The statutory minimum is $1,600, barring certain contingencies.[5]

How is the entitlement to be determined? The law imposes the burden on the applicant to prove "the amount necessary for a year's support," and the factfinder is to ascertain "an amount sufficient to maintain the standard of living that the surviving spouse . . . had prior to the death of the testator."[6] To determine what is "sufficient," the factfinder is instructed by the statute to take into consideration the support available to the applicant other than the year's support and "[s]uch other relevant criteria as the court deems equitable and proper."

---

[1] The applicable law is that which preceded the statutory changes enacted by the legislature in 1997 and effective January 1, 1998. See Editor's notes at the beginning of Chapter 3 of Title 53, Georgia Code.

[2] OCGA § 53-5-2; see also *Smith v. Sanders*, 208 Ga. 405, 406 (67 SE2d 229) (1951) (year's support is an encumbrance higher than any debt); *Rogers v. Woods*, 63 Ga. App. 195, 198 (10 SE2d 404) (1940) (year's support is an absolute right to be preferred to any other claim, except as provided by law).

[3] "The intent is to protect the family survivors from a reduction in their standard of living while the estate is being settled, at least for one year. It is a 'transitional allowance.'" *Richards v. Wadsworth*, 230 Ga. App. 421, 424 (4) (496 SE2d 535) (1998).

[4] OCGA § 53-5-2 (b).

[5] Id.

[6] OCGA § 53-5-2 (c).

There are two important principles underlying this scheme. One is that entitlement to year's support is attributable to status.[7] The other is that the amount to be set apart is governed in part by dependency.[8] One criterion required to be taken into account in determining the amount is available support from other sources.[9] There is no issue of entitlement in this case. As the executors recognized, Annabelle Crisler was Thomas Crisler's surviving spouse. The issue is the amount to which she is entitled.

If no one objects to the amount requested in the application, after due notice is given, then "the judge shall enter an order setting aside as year's support the property or money or both applied for, as set out in the application."[10] If there is objection from someone authorized to object, "the judge of the probate court shall determine the money or property or both to be set aside according to the standards set out in Code Section 53-5-2."[11]

It is evident from the court's order that it took into account Mrs. Crisler's "standard of living during her marriage to Testator," in the court's words, and did not limit consideration to the year or years immediately preceding Mr. Crisler's death, as appellants argue the court was compelled to do. The co-executors contend that the widow is only entitled to maintain the nearly destitute standard of living she experienced while her husband was expensively institutionalized. Taking into account the stark reality that carving out a year's support from the testator's solemn instructions for distribution deprives the beneficiaries of some of what they would otherwise inherit, the law nevertheless insists on the humane purpose served by the provision for the obligatory year's support. It, too, is to be examined realistically.

Nothing in the law requires a mechanical measurement or the exclusion of relevant factors or time periods when the probate court must exercise discretion in assessing what is "equitable and proper."

---

[7] *Gentry v. Black*, 256 Ga. 569, 570-571 (351 SE2d 188) (1987):
[E]ntitlement to a year's support award is a matter of status. This is established by demonstrating the applicant belongs within one of the classes of intended beneficiaries of the year's support statute. . . . The statute does not go further to place any requirement that any among those classes demonstrate actual or legal dependency.
*Hunnicutt v. Hunnicutt*, 180 Ga. App. 798, 799-800 (350 SE2d 770) (1986) (basis for year's support is "that each spouse [is] mutually entitled to a portion of the deceased spouse's estate . . . by virtue of the legally-recognized relationship itself").

[8] " '[U]nder the 1986 amendments, dependency is clearly a factor in the amount of the award.' " *Richards*, supra at 423 (3); *Baker v. Baker*, 194 Ga. App. 477, 478 (1) (390 SE2d 892) (1990) (same); see Note, Determining Eligibility for Year's Support in Georgia: The Tension Between Status & Dependence Requirements, 22 Ga. L. Rev. 1167 (1988).

[9] OCGA § 53-5-2 (c) (1).

[10] OCGA § 53-5-8 (b); see Georgia's New Probate Code, 13 Ga. State Univ. Law Review 605, 661-662 (1997).

[11] OCGA § 53-5-8 (b).

Each case will stand on its own unique circumstances. Precise mathematical formulas have little utility in these instances.

The court did not legally err in weighing into the balance the standard of living which Mrs. Crisler was able to maintain during her marriage to the testator before the life-altering, terminal disability which deprived them both of their accustomed lifestyle. First, the statute does not limit consideration to the year before the death or any particular time other than "prior to the death of the testator or intestate."[12] Second, the right to year's support is founded on status, and Mrs. Crisler enjoyed the status of spouse from 1972 to 1996. All of those years, if otherwise relevant, could be considered in ascertaining standard of living.[13]

Third, the court need not be blinded to the fact that the greatly reduced standard of living was occasioned by the very circumstance which rendered Annabelle Crisler urgently needy in the 12 months subsequent to her husband's death. Had his illness not sapped their financial resources as well as their physical strength and well-being, the standard of living which she had maintained during the first 20 years of marriage would have remained basically the same. Support for a year may be estimated according to the circumstances and standing of the family previous to the death.[14] The court could restore her for the year to what her standard would have been but for the testator's debilitation.

Turning to what was necessary for "support and maintenance" of the widow in her first year of widowhood, the court recognized that she did not actually incur expenses for the items she testified she needed. She was relegated to maintaining the frugal standard of living she had endured during her husband's illness because there was no money to spend. This circumstance is different from that in *Richards v. Wadsworth*,[15] for example, where Richards had substantial resources to live as he chose and apparently maintained the same standard of living he had known while his wife was alive.

Provision for reasonable medical attention to the surviving spouse during the year following testator's death, where it is necessary and the circumstances and standing of the family before the death would warrant it, may be considered in fixing the amount of year's support.[16] So the medical services and supplies Mrs. Crisler

---

[12] OCGA § 53-5-2 (c).

[13] In a challenge of excessiveness in *Dorsey v. Ga. R. Bank &c. Co.*, 82 Ga. App. 237, 241 (60 SE2d 828) (1950), the court took into account as relevant the standard of living of the couple "for many years" prior to testator's death.

[14] *Calhoun Nat. Bank v. Slagle*, 53 Ga. App. 553 (186 SE 445) (1936).

[15] Supra at 421.

[16] *Walraven v. Walraven*, 76 Ga. App. 713 (47 SE2d 148) (1948); *Byrd v. McKinnon*, 189 Ga. App. 768, 769 (377 SE2d 686) (1989) (court did not err in accommodating financial needs

described, based on her experience and her consultation with her physicians, did not have to be excluded just because the need had accumulated over a period of time and she had learned to live with the deprivations. She forwent this care because of her husband's needs, and some of it became more acutely urgent due to the passage of time and the deterioration of her own health. It was not legal error to include amounts for this care in the year's support.

Similarly, the probate court was not forbidden by law to accommodate the need, in the year following testator's death, for one-time purchases, repairs and expenses which would restore his spouse's standard of living during marriage. As the court put it, year's support was authorized "to make her home habitable and accessible, her furniture adequate for her current needs, and her automobile safe." She was not required to wait until the distribution of the estate (at which time she would receive virtually nothing) or seek other means (none of which have surfaced) to live in accordance with what had been her accustomed standard of living before the testator's assets were depleted for his care. It would be ludicrous for the law to be that, because she did not maintain the before-Alzheimer's standard of living during her husband's institutionalization and thereby relegate him to public welfare, she herself must be relegated to the near-pauper financial condition she endured after her husband's debilitation occurred.

The specific list of needed items and services which the court included in determining the amount of the award is justified by the evidence and authorized as "equitable and proper"; they did not raise her to a higher standard than she had in the years when she enjoyed the status of wife, which gave her the right to year's support in the first place. Because her needs were greater due to her own aging and new or worsening physical ailments, the resources for the year's support may have been greater than would have been needed to maintain the standard of living experienced before Mr. Crisler's condition and needs supervened. That does not require them to remain unmet.[17]

The court was obligated to take into consideration other support available to Mrs. Crisler.[18] It is evident that the court did so. Her needs for the year following her husband's death are greater because

---

arising from "various health problems").

[17] See *Tomlinson v. City of Adel*, 169 Ga. 758, 760-761 (151 SE 482) (1930) (giving year's support reflects the public policy of giving protection to widows and children until they may provide their own support for the future); *Ehrlich v. Silverstein*, 121 Ga. 54, 61 (48 SE 703) (1904) (temporary allowance is to provide for family during period it may not compel distribution of estate assets); accord *Nat. City Bank of Rome v. Welch*, 53 Ga. App. 528 (186 SE 596) (1936).

[18] OCGA § 53-5-2 (c) (1).

she will not receive any sizeable amount in administration and thus cannot delay the repairs, replacements, and medical care past the year in issue. That is, her short-term needs are exacerbated and increased because of the certainty that she cannot meet these needs long-term. And she has no "other support available" except welfare, which she has not sought, and her daughter's voluntary contributions from her own personal assets. These resources need not be weighed in the mix of the statute's contemplated "support available."

The court expressly took into account and respected the solvency of the estate ($587,000 plus accruing interest), as it was bound to do.[19] The estate would not be exhausted by the award of the approximately one-third which the widow sought. There would still be a substantial amount for the testator's daughter and two granddaughters.

The court also expressly respected and measured into the equation "the clear testamentary intent" of the testator, who in his will and by his behavior throughout his marriage to Annabelle shared with her the same standard of living he practiced for himself and, at the time he made his will, provided for her financial security in the event he predeceased her. She was to share in most assets equally with the daughter, except as to the parcel of real estate he had inherited. This was an appropriate factor in measuring what share of the estate "was to be a year's support, calculated to fit the particular circumstances," taking into account that " '[a] year's support' was to be the yardstick for the statutorily-mandated 'bequest' to the surviving spouse."[20]

The probate court did not abuse its discretion in its determination of what was "equitable and proper."[21] The determination of the amount of year's support was "limited to the circumstances and standing of the family 'as affected' by the estate of the deceased. [Cit.]"[22] Based on our review of the record and of the law, the court did not err in ordering an excessive award; it did not compensate Mrs. Crisler for "personal sacrifices" but instead considered the effect of this manner of living on Mrs. Crisler's standard of living and on the consequent needs of Mrs. Crisler in the year following her husband's death;[23] the court was authorized to include "non-transitional"

---

[19] OCGA § 53-5-2 (b).

[20] *Hunnicutt,* supra at 800. "The Georgia provision for year's support has been said to be a branch of the statutes of distribution. . . ." *Woodes v. Morris,* 247 Ga. 771, 773 (279 SE2d 704) (1981).

[21] "The public policy behind the statutes awarding a year's support dictates that the provisions of these statutes be construed in favor of the beneficiaries entitled to support [liberally]." *Scott v. Grant,* 227 Ga. App. 1, 3 (487 SE2d 627) (1997). Abuse of discretion is proper standard of review of amount awarded. *McClure v. Mason,* 228 Ga. App. 797, 799 (2) (493 SE2d 16) (1997).

[22] *Gentry,* supra at 571.

[23] See *Richards,* supra at 424-425 (4) ("[y]ear's support is not intended to pay the sur-

expenses which had accumulated and become necessary items for repair or replacement to restore her to her traditional standard of living. Items such as surgery, which would by their nature benefit her long-term, did not lose their character as needed to maintain her health in the one-year period. Finally, Crisler did not fail to satisfy her statutory burden of proof because she testified as to each item needed for restoration and estimated the cost. Absolute precision is not required. Thus, none of the executors' four enumerations has merit.

*Judgment affirmed. Blackburn and Barnes, JJ., concur.*

DECIDED MARCH 31, 1999 —

*Hodges, Erwin, Hedrick & Coleman, David W. Orlowski, King & Spalding, Frank C. Jones, Letitia M. Brown, John A. Wallace*, for appellants.

*Donaldson, Hall, Martin & Bell, Michael C. Hall*, for appellee.

---

viving spouse for loss of the relationship or for personal sacrifices made during the marriage"); *Blassingame v. Rose*, 34 Ga. 418, 421-422 (1866) (services and good conduct of surviving spouse is not to be compensated in year's support).