A04A0549. HOLLAND v. HOLLAND.
(599 SE2d 242)

RUFFIN, Presiding Judge.

After the death of her husband, Edd Holland, in June 1997, Trevice Holland applied for a year's support under the pre-1998

---

Probate Code.[1] The Hollands' son, Arnold, filed a caveat to the application. Following a jury trial, the trial court entered judgment for Trevice in the entire amount requested in her application. Arnold appeals, and for reasons that follow, we affirm in part and reverse in part.[2]

Through her application for a year's support, Trevice sought fee simple title to real property located in Pierce County, Bacon County, and Brantley County. She also requested various tools and farming equipment, two certificates of deposit, Edd's personal possessions, household goods, furnishings, appliances, and title to four vehicles. In his caveat, Arnold did not challenge Trevice's entitlement to a year's support. He asserted, however, that Trevice's claim, which sought Edd's entire estate, was excessive.

The probate court agreed, awarding Trevice some, but not all, of the property requested in her application. Trevice appealed the probate court's order to the superior court, and the case proceeded to a jury trial. At the close of the evidence, and with Arnold's consent, the trial court partially directed a verdict for Trevice, awarding her a life estate in the Pierce County and Bacon County properties, fee simple title to the Brantley County property, and all of the personal property requested in the application, including $20,000 in certificates of deposit.[3] The jury subsequently awarded Trevice fee simple title to the Pierce County and Bacon County properties. Arnold moved for a new trial, asserting that the evidence and the law did not support the jury's verdict regarding the Pierce and Bacon County real estate. The trial court denied the motion, and Arnold appeals.

"In reviewing the trial court's ruling on the motion for new trial based on the general grounds, the proper standard of appellate review is the 'any evidence' test, so that the evidence must be construed most favorably towards the party opposing the motion for new trial."[4] Viewed in this manner, the evidence shows that, in 1996 — the year before Edd died — the Hollands earned $46,175.76 in total income and had $51,313.55 in total expenses. These expenses included an $18,306.79 payment for a new truck. The following year,

---

[1] See former OCGA § 53-5-1 et seq. Effective January 1, 1998, the legislature amended the year's support provisions and codified those amendments at OCGA § 53-3-1 et seq. See *Richards v. Wadsworth*, 230 Ga. App. 421, 422 (2) (496 SE2d 535) (1998). Because Edd Holland died in 1997, the former provisions apply here. See id. Unless otherwise indicated, all statutory references are to the pre-1998 Probate Code.

[2] During the pendency of these proceedings, Trevice died, and Woodard Holland, the executor of her estate, was substituted as plaintiff. For ease of discussion, however, we will refer to the appellee as "Trevice."

[3] Although the record does not clearly establish the value of these certificates of deposit, Trevice admits in her appellate brief that they are worth $20,000.

[4] *Sampson v. Jones*, 236 Ga. App. 57, 58 (510 SE2d 902) (1999).

Trevice received $29,505.07 in total income and expended $27,941.65. In 1998, she earned $12,958.43 and had $14,360.75 in expenses.

The evidence further shows that, between June 1997 and June 1998, the 12 months following Edd's death, Trevice remained in the house where she had lived with Edd on the Pierce County property, paid her monthly bills, and used the truck they had purchased in 1996. Nevertheless, Trevice's daughter-in-law, Gail, testified that Trevice did not have the same standard of living that she enjoyed before her husband died. According to Gail, Trevice was so worried about what she could and could not spend after Edd died that she paid only her monthly bills and medical expenses. Trevice did not buy any clothes, although she needed clothing, and Gail estimated that a reasonable clothes budget for Trevice would be between $2,500 and $3,000 per year.

Arnold's brother, Woodard, testified that his parents' home was in need of repair and painting at the time Edd died. Woodard estimated the cost of this work at $5,200, and he testified that an outbuilding on the property also needed between $6,000 and $7,000 in repairs.

Trevice testified that her standards of living before and after her husband died were not the same. As she explained, "when he was . . . living we went places and . . . it was just all together different then than what it was after he passed away." Asked how much money she needed in the 12 months following Edd's death to carry on the same standard of living, Trevice responded: "I can't say just how much, but it would have been a pretty good bit." According to Trevice, additional money during that year would have enabled her to purchase a different car. She also would have traveled to Florida for a few days, as she and Edd did in the year before he died. She could not, however, estimate the cost of such a trip.

Trevice, who was 84 at the time of trial, explained that she did not spend other assets that she had, including over $50,000 in certificates of deposit, to maintain her standard of living because she was saving money for "[her] old age." She further testified that, although in poor health at the time of trial, she was healthy during the year after her husband died.

A real estate appraiser hired by Arnold valued the Pierce County property at approximately $150,000 and the Bacon County property at approximately $118,000 as of October 2002, the time of trial. Trevice challenges these numbers on appeal, asserting that the Pierce and Bacon County properties should be valued as of 1997. She further claims that the documentary evidence introduced at trial shows that, in 1997, the properties were appraised for tax purposes at $95,166 and $41,254, respectively.

Following the presentation of evidence, the jury awarded Trevice fee simple title to the Pierce and Bacon County real estate as part of her year's support. On appeal, Arnold argues that the evidence did not authorize this award. We agree.

OCGA § 53-5-2 establishes the parameters for a year's support award.[5] Under that provision, "[u]pon the death of any person . . . leaving a spouse, . . . proceedings shall be held to set apart and assign to the spouse . . . either in property or money, a sufficiency from the estate for [his or her] support and maintenance for the space of 12 months from the date of death."[6] A person demonstrates eligibility for a year's support by showing that he or she is the spouse of the deceased.[7] The amount of the award, however, is determined by OCGA § 53-5-2 (c), which provides:

> The amount to be set apart . . . shall be an amount sufficient to maintain the standard of living that the surviving spouse . . . had prior to the death of the testator or intestate, taking into consideration the following: (1) [t]he support available to the person, for whom the property or money is to be set apart, from sources other than year's support, including but not limited to the principal of any separate estate and the income and earning capacity of that person; and (2) [s]uch other relevant criteria as the court deems equitable and proper. *The applicant for a year's support shall have the burden of proof in showing the amount necessary for a year's support.*[8]

The year's support award must be reasonably related to the amount needed by the surviving spouse for a period of 12 months after the decedent's death to maintain the standard of living enjoyed prior to the death.[9] Such award is not intended to compensate the surviving spouse for the death, support the spouse for many years to come, or provide a method for distributing the estate. As we have found,

> [a] claim for year's support is not analogous to a tort claim where general damages can be awarded based on the enlightened consciences of impartial jurors. Nor is it a claim for loss of consortium where damages are not capable of exact pecuniary measure and are left to the enlightened conscience of impartial jurors. Rather it is a statutory claim stemming

---

[5] See *Richards*, supra.

[6] OCGA § 53-5-2 (b).

[7] See *Richards*, supra at 423 (3).

[8] (Emphasis supplied.)

[9] See *Hunter v. Hunter*, 256 Ga. App. 898 (569 SE2d 919) (2002).

from the historical purpose: to prevent a family from being turned away houseless — a widow and children — and cast upon the world in their forlorn condition. The intent is to protect the family survivors from a reduction in their standard of living while the estate is being settled, at least for one year. It is a transitional allowance.[10]

As noted above, the year's support applicant bears the burden of proof regarding the amount that should be awarded under OCGA § 53-5-2 (c). And the record shows that Trevice utterly failed to meet this burden with respect to title to the Pierce and Bacon County properties. Regardless of whether we accept Arnold's total value for these properties — $268,000 — or Trevice's total value — $136,420 — the award of fee simple title to these two properties exceeded the amount Trevice needed to maintain her standard of living during the year after Edd died.

Trevice demonstrated that, in 1996, she and Edd earned approximately $46,000 and expended around $51,000, resulting in a $5,000 loss. We recognize that the Hollands' expenses that year included an "unusual" $18,000 expense for a new truck. Trevice, however, presented no evidence that they enjoyed a better income-expense ratio *before* 1996. The following year, Trevice received $29,000 in income and spent approximately $28,000, for a $1,000 gain. And in 1998, she earned approximately $12,000, while spending $14,000, for a $2,000 loss.

Undoubtedly, Trevice's income diminished the year following Edd's death. But her expenses also declined, and the evidence shows that she remained in her home and was able to pay her bills. Furthermore, in sharp contrast to the $5,000 loss in 1996 (the year before Edd died), Trevice earned more than she spent in 1997 and lost only $2,000 in 1998.

Trevice claims on appeal that her expenditures "were chilled" by Edd's death and by her fear of spending money. Yet, when asked what monetary amount she needed to maintain her standard of living in the year after her husband died, she gave no dollar amount, stating simply "a pretty good bit." As to actual expenses that she wanted to incur that year, but did not, she proved only that repairs at the Pierce County property would have cost $12,200 and that her clothes might have cost $3,000, for a total of $15,200 in added expenses. Moreover, even assuming that Trevice needed a $46,000 income to maintain the standard of living she enjoyed before Edd's death, we cannot understand how the evidence could support an award vastly exceeding

---

[10] (Punctuation and footnotes omitted.) *Richards*, supra at 424 (4).

$34,000 — $46,000 minus $12,000, her 1998 income value.[11] Finally, we note that Trevice had over $50,000 in certificates of deposit available to her after Edd's death.

Arnold agreed at trial that, to compensate Trevice for her lower standard of living in the first year after Edd's death, she was entitled to a life estate in the Pierce and Bacon County properties, title to the Brantley County property, $20,000 in certificates of deposit, four vehicles, and other personal property. Nothing in the record supports the conclusion that she needed more than this, much less that she needed title to two pieces of property valued, even under Trevice's calculations, at $136,420. Indeed, this amount is almost three times the $46,000 income earned by the Hollands in 1996 — the only pre-death income value presented by Trevice.

On appeal, Trevice argues that the jury's award is supported by the fact that all of Edd's heirs *except* Arnold consented to her application. She contends that the approval of the other heirs should be considered in determining the amount of her year's support under OCGA § 53-5-2 (c). Undoubtedly, this provision permits consideration of any "relevant criteria as the court deems equitable and proper."[12] Such criteria, however, must be relevant to the surviving spouse's standard of living.[13] And the consent of the other heirs has no relevance to establishing the amount that was necessary to sustain Trevice's standard of living in the year following her husband's death.

Once Arnold raised a proper objection to the year's support application, Trevice bore the burden of showing that all of the property and money requested in the application was reasonably related to the amount needed for her year's support.[14] Trevice failed to meet this burden as to the fee simple interest in the Pierce and Bacon County properties. Accordingly, we reverse the trial court's entry of judgment on the jury's verdict, which awarded Trevice fee simple title to the Pierce and Bacon County realty.[15] But, because the

---

[11] Trevice made no effort to break down for the jury her income and expenses between June 1997 and June 1998, the 12 months following her husband's death. She only presented evidence of her January-December 1997 and January-December 1998 income and expense values.

[12] OCGA § 53-5-2 (c) (2).

[13] See *Richards*, supra at 424-425.

[14] See OCGA §§ 53-5-2 (c); 53-5-8 (b).

[15] See *Allgood v. Allgood*, 263 Ga. App. 177, 180 (1) (587 SE2d 377) (2003) (judgment notwithstanding the verdict should have been entered against widow in year's support proceeding because widow would not put a dollar figure on amount of money needed as year's support and evidence showed that widow's financial resources and income exceeded expenses for year following her husband's death); *Hunter*, supra at 899-900 ($91,500 awarded to widow by probate court as year's support was more than widow needed to maintain her standard of living for the 12 months after her husband's death, despite testimony that she was 74, suffering from arthritis, and unsure how much longer she could work); *Richards*, supra at 424 (3) (widower limited to statutory minimum for year's support after his wife's death in 1995

parties do not challenge the partial directed verdict granted Trevice by the trial court, we affirm that portion of the judgment.

*Judgment affirmed in part and reversed in part. Eldridge and Adams, JJ., concur.*

DECIDED MAY 5, 2004.

*Randall M. Clark*, for appellant.
*Strickland & Garmon, Dennis J. Strickland, Sr.*, for appellee.

---

because, "[e]ven if [widower] alone required the same income that the two lived on in 1994, his other resources greatly exceeded his actual expenses").