## A07A0745. ANDERSON v. WESTMORELAND.

(649 SE2d 820)

MIKELL, Judge.

After a bench trial, the Superior Court of Stephens County granted the petition for year's support filed by Janelle Westmoreland, the widow of Paul Westmoreland. On appeal, Paulette Anderson, the decedent's only child, raises two enumerations of error: (1) the trial court erroneously denied her motions for involuntary dismissal; and (2) the trial court erred in granting Westmoreland's petition. We agree and reverse. Since the trial court's order denying Anderson's motions for involuntary dismissal states as the reason for its ruling the grant of the petition for year's support, we will address Anderson's two enumerated errors simultaneously.

Paul Westmoreland, Jr., died intestate on August 28, 2002. Appellee filed her petition for year's support on November 4, 2002, seeking one-half undivided interest in property located at 132 Currahee Point, Toccoa, Stephens County (the "marital home"), one-half interest in two motor vehicles, a 1985 Ford F-150 4 X 4 and a 2000 Lincoln Towncar, and a tax refund check in the amount of $1,538.81. Anderson filed an objection to the petition on the ground that "[p]etitioner was not dependent upon the decedent for support and has ample and sufficient personal assets to support herself." The Probate Court of Stephens County granted Westmoreland's petition. Anderson appealed to the superior court, which also granted the petition, awarding Westmoreland one-half interests in the marital home and the tax refund check as well as the automobiles. Anderson appeals from the trial court's order.

The record shows that Westmoreland and the decedent were married for almost sixteen years; that he lived at the marital home and she lived in Helen where she operated one of their two restaurants; that she sold the second restaurant, Fisherman's Cove, after her husband became ill so that she could take care of him; and that she was seeking the decedent's one-half interest of the marital home in her petition, as well as the tax refund check and vehicles identified therein. The parties stipulated that the value of the marital home at the time of the decedent's death was $293,500, and that four months before the hearing, its value was $410,000, and that the decedent and Westmoreland owned the property as tenants in common, each owning a one-half undivided interest in the property.

Westmoreland explained that she and the decedent were retired at the time of his death and that they were never on a budget during his life. In the year following his death, Westmoreland received a gross monthly income of $12,000 from Paul's Steak House, approximately $2,685 from the promissory note received in the sale of Fisherman's Cove, and $800 from social security. From that income,

she paid $8,500 to $9,000 in quarterly taxes. She also paid an additional $38,000 in taxes during the year after her husband's death because while he was living, he only paid $1,500 in taxes each quarter and a lump sum at the end of each year. Westmoreland had that amount increased after his death so that she would no longer have to pay a lump sum. Westmoreland testified that she did not save any portion of the approximately $37,000 of income that she netted per quarter after taxes.

When asked about monthly expenses that she incurred during the year following the decedent's death, Westmoreland stated "I don't keep up with that stuff." She later recalled, however, that she paid $10,000 for the decedent's funeral because he did not have insurance; that she put a new roof on her house, which cost approximately $13,000, had trees cut down, and purchased all new furniture; and that she took a few trips. Westmoreland maintained that she continued to live in the same way she did when her husband was alive though she may have "splurged a bit" because she had worked during the 15 years that they were married. She also explained that she used money from her personal savings to build a swimming pool and add a room to the house.

On cross-examination, Westmoreland admitted that she had not put the roof on the house during the year following her husband's death but had done it since the probate court hearing; that the promissory note from the sale of Fisherman's Cove showed that she and the decedent were to collect the $2,685 monthly payments even though at the probate court hearing, she testified that the note "belonged" only to her; and that she had not tendered the decedent's share of those payments to his estate. Anderson moved for involuntary dismissal at the close of Westmoreland's case and at the close of her case, which the trial court denied.

Westmoreland has the burden of proof in showing the amount necessary for year's support,[1] and we find that she has not met her burden. As we held in *Holland v. Holland*,[2]

> [t]he year's support award must be reasonably related to the amount needed by the surviving spouse for a period of 12 months after the decedent's death to maintain the standard of living enjoyed prior to the death. Such award is not intended to compensate the surviving spouse for the death, support the spouse for many years to come, or provide a method for distributing the estate. As we have found, a claim

---

[1] *Allgood v. Allgood*, 263 Ga. App. 177, 179 (1) (587 SE2d 377) (2003); OCGA § 53-3-7.

[2] 267 Ga. App. 251 (599 SE2d 242) (2004).

for year's support is not analogous to a tort claim where general damages can be awarded based on the enlightened consciences of impartial jurors. Nor is it a claim for loss of consortium where damages are not capable of exact pecuniary measure and are left to the enlightened conscience of impartial jurors. Rather it is a statutory claim stemming from the historical purpose: to prevent a family from being turned away houseless — a widow and children — and cast upon the world in their forlorn condition. The intent is to protect the family survivors from a reduction in their standard of living while the estate is being settled, at least for one year. It is a transitional allowance.[3]

The statute governing the determination of year's support, OCGA § 53-3-7 (c), provides that

[i]f objection is made to the amount or nature of the property proposed to be set aside as year's support, the court shall set apart an amount sufficient to maintain the standard of living that the surviving spouse and each minor child had prior to the death of the decedent, taking into consideration the following: (1) The support available to the individual for whom the property is to be set apart from sources other than year's support, including but not limited to the principal of any separate estate and the income and earning capacity of that individual; (2) The solvency of the estate; and (3) Such other relevant criteria as the court deems equitable and proper.[4]

Westmoreland testified that she received approximately $180,000 from various sources of income, but she had not kept up with her monthly expenses. She recalled that during the year after her husband's death, she paid approximately $74,000 in taxes, but spent the $37,000 that she netted each quarter after paying taxes. Westmoreland testified that she "splurged a bit," taking some trips and making improvements to her home, the costs of which she did not supply at trial, because she felt that she deserved them after working for so many years and taking care of the decedent. However, "year's support is not intended to pay . . . for personal sacrifices made during the marriage. Nor do the contributions made by the surviving spouse during the marriage entitle her to claim year's support based on an

---

[3] (Punctuation and footnotes omitted.) Id. at 254-255.
[4] See also *Burkett v. Estate of Burkett*, 248 Ga. App. 719 (548 SE2d 628) (2001).

equitable interest in the marital residence."[5] The purpose of year's support award is to maintain the standard of living for a period of 12 months from the decedent's death,[6] but it appears from Westmoreland's testimony that her standard of living was improved and that she had the resources independent of the year's support to afford those improvements. Even if we include the $13,000 she paid to replace the roof of her house as an expense, although she admitted on cross-examination that the roof was not replaced during the year after her husband's death, her income, independent of year's support, still exceeded her expenses. Where the surviving spouse's income exceeds the expenses shown for the year after the death, the petition for year's support must be denied.[7]

"When reviewing an appeal from the trial court's denial of a motion for involuntary dismissal in a bench trial, this Court will uphold the trial court's findings if there is any evidence to support them."[8] Under these facts, however, we find no evidence to support the trial court's finding that Westmoreland needed the award of the decedent's interest in the marital home, valued at $205,000, in addition to the tax refund check and the automobiles, as year's support. Therefore, we reverse the trial court's award of year's support.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 12, 2007 — 

*Orr & Orr, Spence Johnson,* for appellant.
*Sean A. Black,* for appellee.

---

[5] (Citation and punctuation omitted.) *Hunter v. Hunter,* 256 Ga. App. 898, 900 (569 SE2d 919) (2002).

[6] See *In re Estate of Battle,* 263 Ga. App. 73 (587 SE2d 140) (2003).

[7] See *Allgood,* supra (judgment notwithstanding the verdict against petition for year's support required where petitioner's income and resources exceed her expenses); *Richards v. Wadsworth,* 230 Ga. App. 421, 423-424 (3) (496 SE2d 535) (1998) (j.n.o.v. entered and jury verdict reversed to statutory minimum where income exceeded expenses).

[8] (Citation omitted.) *Zuberi v. Gimbert,* 230 Ga. App. 471, 472 (496 SE2d 741) (1998).