**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 30, 2023**

# In the Court of Appeals of Georgia

A23A0352. In re JERRY W. SESSIONS, deceased.

DOYLE, Presiding Judge.

Following the death of his father, Michael Sessions appeals from a probate court order awarding a year's support to his father's 77-year-old widow,[1] Mavis Sessions. The court awarded Mavis a life estate in the marital residence, and Michael argues that the record does not support a finding that her economic need justified the award based on the factors in OCGA § 53-3-7 (c). For the reasons that follow, we discern no abuse of discretion by the probate court, so we affirm.

The record shows that Mavis and Jerry Sessions wed in 1974 and remained married until Jerry died in 2020. Jerry had two children from a prior marriage, one of

---

[1] Mavis was 77 years old as of the June 2022 hearing in this case.

whom is Michael, and Mavis and Jerry had two additional children together.[2] After Jerry's death intestate, Mavis filed a petition for year's support. Mavis averred that Jerry's estate had a total value of $213,000, including the marital home in Georgia, bank accounts, and a menagerie of mobile homes, recreational vehicles, automobiles, boats, and motorcycles, with the oldest being a 1963 Chevy Impala and the newest being a 2016 Kawasaki KVF300 all-terrain vehicle.[3] At the hearing on Mavis's petition, evidence was adduced identifying an additional parcel of real property in Alabama, valued at approximately $55,000; the marital home was valued at approximately $70,000. The wording of the petition is somewhat unclear, but it appears that Mavis sought full title to the jointly-owned marital home as well as all of the vehicles.

Michael filed an objection to the petition, and the probate court held an evidentiary hearing that included testimony from Mavis and her son, Cory Sessions, who helps her with her finances and who helped Mavis estimate her income and expenses for this case. Following the hearing, the probate court held that Mavis was

---

[2] None of the other children are parties to this action.

[3] Mavis's primary mode of transportation was a 2011 Toyota Venza.

not entitled to all of the property she listed, but it held that she was entitled to some award, which it made in the form of a life estate in the marital home.

Michael now appeals, arguing that the record does not support the probate court's award. Specifically, he contends that Mavis's expenses do not justify the award based on the factors in OCGA § 53-3-7 (c). We disagree.

As a threshold matter, we review factual disputes in the record under the "any evidence" standard,[4] and "[t]he probate court's determination of the amount awarded as year's support will be upheld on appeal absent an abuse of discretion."[5]

OCGA § 53-3-7 (c) provides:

If objection is made to the amount or nature of the property proposed to be set apart as year's support, the court shall set apart an amount sufficient to maintain the standard of living that the surviving spouse and each minor child had prior to the death of the decedent, taking into consideration the following:

(1) The support available to the individual for whom the property is to be set apart from sources other than year's support, including but not

---

[4] *Allgood v. Allgood*, 263 Ga. App. 177, 179 (1) (587 SE2d 377) (2003).

[5] *In re Estate of Battle*, 263 Ga. App. 73, 73-74 (587 SE2d 140) (2003).

limited to the principal of any separate estate and the income and earning capacity of that individual;

(2) The solvency of the estate; . . . and

(3) Such other relevant criteria as the court deems equitable and proper.
. . .

Thus, "[t]he year's support award must be reasonably related to the amount needed by the surviving spouse for a period of 12 months after the decedent's death to maintain the standard of living enjoyed prior to the death."[6]

Here, there was evidence that Mavis's expenses in the year after Jerry's death were approximately $28,000 and that Mavis had deferred necessary tree work at the marital property that would cost $18,000, as well as dental work that would cost $10,000. Her income was based solely on monthly Social Security payments totaling $20,400 annually. She also held two bank accounts totaling $20,000, as well as her half interest in the marital home. Thus, her expected non-estate income was $20,400 (along with $20,000 in liquid bank account assets), and her expected expenses were $28,000 plus the expected tree work and dental expenses. Thus, there was evidence

---

[6] (Punctuation omitted.) *Anderson v. Westmoreland*, 286 Ga. App. 561, 562 (649 SE2d 820) (2007).

4

that Mavis would have a shortfall of approximately $36,000 to meet her regular expenses incurred under her normal standard of living.

Accounting for the anticipated dental work and tree work did not exceed the probate court's authority because:

> [p]rovision for reasonable medical attention to the surviving spouse during the year following testator's death, where it is necessary and the circumstances and standing of the family before the death would warrant it, may be considered in fixing the amount of year's support. So the [dental] services . . . [Mavis] described, based on her experience and her consultation with her [dentist], did not have to be excluded just because the need had accumulated over a period of time and she had learned to live with [it].[7]

Likewise, with respect to the tree work, "the court was authorized to include 'non-transitional' expenses which had accumulated and become necessary items for repair or replacement to restore her to her traditional standard of living."[8]

---

[7] (Citation omitted.) *Driskell v. Crisler*, 237 Ga. App. 408, 411-412 (515 SE2d 416) (1999).

[8] Id. at 413-414.

Based on its accounting, the probate court awarded Mavis the value of a life estate in the marital home. The home was valued at approximately $70,000, and Mavis was 77 years old at the time of the hearing. Mavis already had a half interest in the home; thus, while there was no specific value given for a life estate in the remaining half-interest, it was necessarily less than the value of Jerry's half interest — $35,000. The probate court did not need to set a precise value of 77-year-old Mavis's life estate in a house she owned a half interest in, because

> [n]othing in the law requires a mechanical measurement or the exclusion of relevant factors or time periods when the probate court must exercise discretion in assessing what is equitable and proper. Each case will stand on its own unique circumstances. Precise mathematical formulas have little utility in these instances.[9]

Therefore, the value of the life estate for Mavis was within the range of the single-year shortfall she demonstrated through evidence at the hearing, and this was properly calibrated to Mavis's standard of living as provided by OCGA § 53-3-7 (c). Further, the award adequately accounted for the solvency of the estate[10] (it did not prevent distribution of the myriad vehicles and the Alabama real property), and the probate

---

[9] (Punctuation omitted.) Id. at 410-411.

[10] See OCGA § 53-3-7 (c) (2).

court explained its "equitable and proper"[11] rationale as addressing Mavis's immediate needs following her husband's death.[12]

Viewed in favor of the trial court's judgment, the evidence supported the probate court's exercise of discretion in awarding Mavis the value of a life-estate in the marital home.[13] Accordingly, we affirm the probate court's judgment based on this record.

*Judgment affirmed. Gobeil, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[11] OCGA § 53-3-7 (c) (3).

[12] The probate court's order stated: "The court finds that the value of a life estate in the residence, together with [Mavis's] income and separate estate, bears a reasonable relation to the amount sufficient to maintain the standard of living" for twelve months. It explicitly rejected the amount requested by Mavis as exceeding such an amount.

[13] See *Burkett v. Estate of Burkett*, 248 Ga. App. 719, 720 (548 SE2d 628) (2001) (affirming award of the value of a life estate in marital residence as year's support). We note that the probate court explicitly and appropriately accounted for Mavis's age and the value of the residence. This supported its exercise of discretion in this case.