**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 19, 2023**

# In the Court of Appeals of Georgia

A23A0923. IN RE ESTATE OF ALFRED JEROME DALLAS, SR.

BROWN, Judge.

Dorothy Dallas filed a petition for year's support following the death of her husband, Alfred Jerome Dallas, Sr. A caveat was filed by Alfred's children from a prior marriage, and after a bench trial, the probate court denied Dorothy's petition. Dorothy appeals from the probate court's order, contending that the probate court abused its discretion in considering life insurance proceeds Dorothy received after Alfred's death as available support, and in denying her petition. We affirm.

On appeal, "we review factual disputes in the record under the any evidence standard, and the probate court's determination of the amount awarded as year's support will be upheld on appeal absent an abuse of discretion." (Citations and punctuation omitted.) *In re Sessions*, 367 Ga. App. 426, 427 (886 SE2d 382) (2023).

See also *McClure v. Mason*, 228 Ga. App. 797, 799 (2) (493 SE2d 16) (1997) (abuse of discretion is proper standard of review of amount awarded).

The record shows that Alfred and Dorothy were married for nearly 32 years and had two children together. Alfred also had children from a prior marriage. Alfred, Dorothy, three of their children,[1] and a grandchild all lived in the marital residence. Alfred owned a trucking business of which he was the sole employee. Dorothy assisted her husband's business by working as his personal dispatcher, but she did not receive a separate salary.

Alfred died intestate on June 6, 2020. The parties agree that there are two assets in Alfred's estate: a vehicle which was jointly titled in Alfred and Dorothy's names and the marital residence which was titled in only Alfred's name. Dorothy filed a petition for year's support, seeking the marital residence in fee simple.[2] A caveat was filed by Alfred J. Dallas, Jr., Kimberley Dallas, Beverley Dallas, and Michael Dallas, Alfred's children from a prior marriage ("the caveators").

---

[1] Although not clear from the record, one of the children living with Dorothy and Alfred seems to be Dorothy's from a prior relationship.

[2] "The allowance given in response to a year's support application may be in the form of real property from the estate of the deceased spouse[.]" *Cabrel v. Lum*, 289 Ga. 233, 237 (2) (710 SE2d 810) (2011).

Following Alfred's death, Dorothy received the proceeds of a life insurance policy in the amount of $100,000. She used the proceeds to pay off the balance of the jointly titled vehicle ($21,357.53) and the marital residence's air conditioning system ($7,884.07), and to pay the $1,400 monthly mortgage during the 12-month period following Alfred's death.[3] Additionally, Dorothy paid $10,319.25 in funeral expenses[4] with the proceeds.

In her responses to the caveators' interrogatories, Dorothy listed her monthly expenses totaling approximately $4,002, or $48,000 for the year, including $1,053.92 for Alfred's medical bills.[5] During the trial, Dorothy estimated that she had around $3,000 in monthly expenses after "drastically cut[ting] down." Specifically, Dorothy testified that she pays the following expenses on a monthly basis: $52 for lawn care, $34.42 for dental insurance, $243.95 for health insurance, $68 for security, $136 for Internet and cable, $100 for her phone, $200 for groceries, $400 on gas for her

---

[3] At the time of his death, the marital residence had an outstanding mortgage balance of approximately $170,000.

[4] However, the testimony presented during the trial showed that Dorothy paid a total of $8,223.91 in funeral expenses.

[5] This amount includes $483 per month for the van that Dorothy later paid off using life insurance proceeds.

3

vehicle, and between $400 and $500 on other utilities. She pays an annual homeowners association fee of $240.

In addition to the $100,000 in life insurance proceeds, Dorothy received a one-time payment of $255 from the Social Security Administration. Dorothy began working for DoorDash in February 2021, earning $15,462.56.[6] The children still living in the marital residence paid rent to Dorothy. She testified that one child consistently paid $400 every month while the other two paid around $500 combined monthly, but it was "not as consistent."

As to her lifestyle, Dorothy testified that after her husband died, there was a dramatic drop in her standard of living. She and Alfred frequently went on vacation, but she could no longer afford to take any vacations. She could no longer shop and buy clothes, go to the movies or out to dinner as she was accustomed. During their marriage, the couple gave their church around $1,000 each month, but she now could only afford to give $200 to $250 monthly. According to Dorothy, she depended on her husband for everything financially.

---

[6] Dorothy began working a second job at Prospect United Methodist Church in August 2021, outside the twelve-month period following Alfred's death.

During the trial, the caveators presented testimony from a forensic accountant who "analyze[d] the spending and the lifestyle of the parties prior to Mr. Dallas' death and after his death." The accountant's analysis showed for the period of January 2019 until June 2020 (the 18 months leading up to Alfred's death), a total of $162,227.16 deposited into the couple's bank account, and a total spending of $156,367.09, during that same time period ($8,687 monthly spending). The accountant calculated that Dorothy would have needed a total of $89,016.81 "to maintain her lifestyle and pay the expenses of the estate that she paid" in the year following Alfred's death. Thus, according to the accountant, the life insurance proceeds alone would have been more than sufficient to maintain her lifestyle and pay the estate expenses. The accountant calculated that Dorothy's monthly expenses in the year following Alfred's death amounted to $4,674.86, a higher amount than Dorothy's monthly expense estimate. She calculated Dorothy's monthly "earning ability" through her two jobs as around $2,000 monthly.

In its order, the probate court found that Dorothy's "testimony did not adequately convey the amount necessary for a year's support," noting that she "did not provide an overly clear picture of the standard of living she experienced during her marriage or her expenses in the year following the decedent's passing." In

contrast, the court found that the caveators' accountant provided a "clearer snapshot of the financial situation." Based on the evidence presented, and after considering "the solvency of the estate, the surviving spouse's earning capacity, and the support available to [Dorothy] from sources other than year's support (specifically, the $100,000.00 in life insurance proceeds)," the probate court found that Dorothy's support exceeded the expenses shown in the year after Alfred's death, and thus, Dorothy was not entitled to any amount.

Dorothy appeals from this order, contending that the probate court abused its discretion in denying her petition. In related enumerations, she also contends that the life insurance proceeds she received following Alfred's death should not have counted as support/income.

1. Before turning to the merits, we note that Dorothy's brief enumerates four errors, but her brief contains a single unnumbered argument section for all enumerations. See Court of Appeals Rule 25 (a) (7) ("The argument . . . should generally follow the order of the enumeration of errors. Point headings that identify and organize arguments are encouraged."). Given this organization, it is difficult to decipher her specific arguments.

Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.

(Citation and punctuation omitted.) *Langford v. Dept. of Community Health*, 363 Ga. App. 121, 123 (871 SE2d 26) (2022).

2. "The surviving spouse and minor children of a testate or intestate decedent are entitled to year's support in the form of property for their support and maintenance for the period of 12 months from the date of the decedent's death." OCGA § 53-3-1 (c). However,

[i]f objection is made to the amount or nature of the property proposed to be set apart as year's support, the court shall set apart an amount sufficient to maintain the standard of living that the surviving spouse and each minor child had prior to the death of the decedent, taking into consideration the following:

(1) The support available to the individual for whom the property is to be set apart from sources other than year's support, including but not limited to the principal of any separate estate and the income and earning capacity of that individual;

(2) The solvency of the estate; . . . and

(3) Such other relevant criteria as the court deems equitable and proper. . . .

7

OCGA § 53-3-7 (c). "[T]he year's support award must be reasonably related to the amount needed by the surviving spouse for a period of 12 months after the decedent's death to maintain the standard of living enjoyed prior to the death." (Citation and punctuation omitted.) *Anderson v. Westmoreland*, 286 Ga. App. 561, 562 (649 SE2d 820) (2007). The petitioner has the burden of proof in showing the amount necessary for year's support. OCGA § 53-3-7 (c).

(a) In related enumerations, Dorothy asserts that the probate court erred in counting the life insurance proceeds as her income. We disagree.

While our research has not yielded a Georgia case definitively answering whether a court, in deciding an award of year's support, should take into consideration life insurance proceeds received by a petitioner,[7] we conclude that the probate court did not err in considering the $100,000 in life insurance proceeds as support available to Dorothy. The relevant Code section states that the court, in deciding the amount of year's support to award, should take into consideration the

---

[7] In *In re Estate of Battle*, 263 Ga. App. 73 (587 SE2d 140) (2003), this Court affirmed the probate court's award of year's support and rejected the caveators' contention that the probate court abused its discretion in refusing to consider as income a $22,285 lump-sum death benefit the petitioner received from his late wife's employer. We noted that "the probate court's order clearly indicates that the court did consider the death benefit as a resource available for [petitioner's] support." (Emphasis omitted.) Id. at 74.

"support available to the [petitioner] from sources other than year's support, *including but not limited to* the principal of any separate estate and the income and earning capacity of that individual[.]" (Emphasis supplied.) OCGA § 53-3-7 (c) (1). By using this language, the legislature clearly meant to give the court discretion in what it could consider as available support to the petitioner. See *Berryhill v. Georgia Community Support and Solutions*, 281 Ga. 439, 442 (638 SE2d 278) (2006) (legislature's use of phrase "includes but is not limited to" indicates an intent to illustrate or enlarge); *Bullock v. City of Dallas*, 248 Ga. 164, 167 (2) (c) (281 SE2d 613) (1981) ("The use of 'any' and 'but not limited to' seem[s] calculated to give the most expansive application possible."). And, nothing in the statute prohibits a court from treating life insurance proceeds as such support. See *Driskell v. Crisler*, 237 Ga. App. 408, 410 (515 SE2d 416) (1999) ("Nothing in the law requires a mechanical measurement or the exclusion of relevant factors or time periods when the probate court must exercise discretion in assessing what is 'equitable and proper.'").

Dorothy argues that the probate court should have "considered her [petition] prior to the disbursement of the life insurance proceeds" and that the "receipt of the insurance proceeds was a contingency upon which an award was not dependent." See *Knowles v. Knowles*, 125 Ga. App. 642, 647 (4) (188 SE2d 800) (1972) ("[t]he right

9

to a year's support is an absolute right which cannot be divested by any contingency occurring after it accrues"). However, "[t]he proceeds of a life insurance policy vest in the named beneficiary *on the death of the decedent* and are not part of the decedent's estate." (Emphasis supplied.) *King v. Travelers Ins. Co.*, 202 Ga. App. 568, 569 (415 SE2d 176) (1992). Accordingly, the vesting of life insurance proceeds is not a contingency occurring after the right to year's support accrued. More importantly, because the life insurance proceeds were support available to Dorothy in the year following her husband's death, the probate court properly considered them in deciding Dorothy's petition for year's support.

Dorothy alternatively asserts that the portion of life insurance proceeds used to pay her husband's creditors and expenses of his estate should not be counted in calculating her available support. But, the accountant included the expenses and debts of Alfred's estate which were paid by Dorothy as part of Dorothy's total expenses in the year after Alfred's death, and, as stated above, the probate court relied on the testimony from the caveators' accountant in reaching its decision. The probate court also noted in its order that Dorothy likely has a claim against Alfred's estate for those expenses.

10

Having concluded that the probate court did not err in considering the life insurance proceeds as support or income available to Dorothy in the year following her husband's death, we cannot say that the probate court abused its discretion in concluding that Dorothy failed to meet her burden of showing that an award of the marital home is necessary for year's support. Even including the estate expenses/debts paid by Dorothy as her expenses, the support available to Dorothy — including the life insurance proceeds, the Social Security payment, Dorothy's income from DoorDash, and the rent money collected from Dorothy's children living in the marital residence — exceeds her expenses. Because "[Dorothy's] income exceeds the expenses shown for the year after the death, the petition for year's support must be denied."[8] *Anderson*, 286 Ga. App. at 564 (petitioner not entitled to decedent's one-half interest in marital residence, among other things, because petitioner's resources apart from year's support exceeded her expenses, including cost of decedent's funeral

---

[8] In her reply brief, Dorothy argues that this language "is not and cannot be the law. Whether income exceeds expenses is not the inquiry; rather, the inquiry is whether the surviving spouse is able to maintain the same standard of living." But, whether the petitioner's support/income exceeds expenses is relevant to whether the petitioner is able to maintain the same standard of living, and thus whether the petitioner is entitled to year's support. See OCGA § 53-3-7 (c) (directing the court to consider other support available to the petitioner in determining the amount of year's support).

11

and a new roof for marital residence). Compare *In re Sessions*, 367 Ga. App. at 427-428 (affirming year's support award of a life estate in the marital home where the evidence showed that petitioner "would have a shortfall of approximately $36,000 to meet her regular expenses incurred under her normal standard of living").

Dorothy contends that she was required to reduce expenses in the year following Alfred's death to "'get by,'" and therefore she was not maintaining the same standard of living. We agree that Dorothy clearly testified during the trial that she was not maintaining the same standard of living that she had when Alfred was alive: "[t]here wasn't enough money for me to do the things that we used to do, so going on vacation was not an option anymore. I can't go on vacation. I can't shop and buy clothes like I used to. I can't do entertainment, go to the movies, or out to dinner like I used to." But at no point did Dorothy provide an estimate of the monetary amount needed to sustain her lifestyle and continue to do these things. We emphasize that when an objection is made to a petition for year's support, the petitioner bears the burden of proof regarding the amount, and the "award must be reasonably related to the amount needed by the surviving spouse for a period of 12 months after the decedent's death to maintain the standard of living enjoyed prior to the death." *Holland v. Holland*, 267 Ga. App. 251, 254-256 (599 SE2d 242) (2004) (although

12

petitioner asserted that her standard of living was not the same and that her spending was "'chilled'" following her husband's death, petitioner failed to provide a monetary amount to maintain her standard of living).

Finally, Dorothy asserts that if the probate court's order is affirmed, she will be "required . . . to sell the marital residence she has resided [in] for nearly two decades to obtain funds to pay the Caveators under the laws of intestacy." While we are sympathetic to Dorothy's position, an award of year's support "is not intended to compensate the surviving spouse for the death, support the spouse for many years to come, or provide a method for distributing the estate." *Holland*, 267 Ga. App. at 254. "Nor do the contributions made by the surviving spouse during the marriage entitle her to claim year's support based on an equitable interest in the marital residence." (Citation and punctuation omitted.) *Anderson*, 286 Ga. App. at 563-564. Given the evidence, the probate court did not abuse its discretion in denying Dorothy's year's support petition.

*Judgment affirmed. McFadden, P. J., and Markle, J., concur*.

13